## WALLACE DEAS v. STATE

161 So. 729.
Division A.
Opinion Filed May 28, 1935.

*Harry P. Johnson,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant for the State.

PER CURIAM.—This is an unfortunate case wherein it appeared by the evidence adduced at the trial that plaintiff

in error had a number of acts of carnal intercourse with a sixteen-year-old girl, finally resulting in the girls' pregnancy and the subsequent prosecution and conviction of plaintiff in error for a violation of Chapter 8596, Acts 1921, Section 7552, C. G. L., 5409 R. G. S., denouncing as a felony any act of unlawful carnal intercourse with any unmarried person (male or female) of previous chaste character, who is at the time of such unlawful carnal intercourse under the age of eighteen years. The present writ of error is from a judgment and sentence to one year's imprisonment imposed upon plaintiff in error for a violation of the above stated statutory inhibition.

According to the testimony of the prosecutrix the first act of sexual intercourse was committed with her by the defendant in the back part of a country church about a year prior to the trial. At the time of this occurrence, so the prosecuting witness testified, there were present her thirteen-year-old sister and a boy companion seated in the front part of the church waiting for the congregation to assemble for the night church services which were just about to begin. Subsequent acts of intercourse were alleged to have taken place between the parties on the way home from church, in a hammock, and on the way to and from a field. The defense was apparently predicated upon the girl's lack of a previous chaste character rather than upon any pretended denial of the alleged habitual course of mutually agreeable sexual intercourse that seems to have been kept up between the parties on more or less frequent occasions succeeding the first episode that had happened in the back of the church as hereinabove stated.

Prior to Chapter 8596, Acts 1921, Section 5409 R. G. S., was limited in its application to the punishment of those male persons who should by means of unlawful carnal inter-

course violate the chastity of an unmarried female person under eighteen years of age. The purpose of the 1921 amendment (passed at the first session of the Legislature elected after the ratification of the national woman's suffrage amendment) was to abolish the distinction as to sex, and thereupon to provide for the protection of the chastity of all unmarried persons, whether male or female, under the age of eighteen years when of previous chaste character.

So the gist of the offense denounced by the 1921 Act is the violation of the previous chaste character of a person under eighteen years of age by the having of unlawful carnal intercourse with such previously chaste person. Thus the statute, as it now reads, is designed to protect the youth of this State of both sexes from the initial violation of their actual condition of sexual chastity, rather than from the consequences of their subsequent voluntary indulgence in unmorality, or the promiscuous engaging in sexual intercourse on the part of those persons under eighteen years of age who by reason of an already acquired sexual promiscuity, are no longer of previous chaste character within the statutory definition of the crime denounced by the 1921 law. The law was amended in 1921 to produce this very change, and the courts of the State are bound to take notice of the effect of the amendment that has been made.

In this case the defense was based on an asserted lack of previous chaste character on the part of the prosecuting female when the defendant first had sexual intercourse with her as she testified at the trial. To rebut the testimony of the prosecuting witness as to her previous chaste character, that is, of her undefiled virginity, prior to her initial indulgence with the defendant, the defendant attempted to introduce in evidence proof of the general rep-

utation of the prosecuting female as an unchaste girl in the community in which she lived. The evidence was ruled out and the defendant excepted.

Where the defense does not consist of a complete denial of any and all acts of unlawful sexual intercourse as charged (in which case proof of previous chaste character of the prosecuting female is only formally or technically required, like proof of venue, etc.) but is predicated on the express or implied admission that sexual intercourse did take place, but was with a subject not within the definition of the statute as a person of previous chaste character, evidence tending to show the common and general unchaste reputation of the prosecuting female in a case like this, should be received as tending to throw light on the veracity of the testimony of the witness that her own previous character was that of a chaste female, when such proof is confined to a time at or prior to the alleged unlawful act of sexual intercourse with her upon which the state relies for a conviction. State v. Patterson, 88 Mo. 88. This is in consonance with the holding in Prior v. Oglesby, 50 Fla. 248, 39 Sou. Rep. 593, wherein it was held that whatever evidence is offered which will assist the jury in knowing which party speaks the truth of the issues in a case should be regarded as relevant and received, when to admit it does not override other formal rules of evidence.

Another circumstance complained of as error at the trial is that shown by the following quotation taken from the trial judge's authenticated bill of exceptions:

"At 5:00 o'clock P. M., the jury returned into open court, and the following proceedings were had:

"By THE COURT: Gentlemen of the jury, have you agreed upon a verdict?

"By THE FOREMAN: We have not agreed, your Honor.

We have come back to ask that the prosecuting witness's testimony, given on the stand, be reviewed, so as to fix the time of the first sexual intercourse.

"(REPORTER'S NOTE:—Being permitted by the Court, the Reporter here read to the jury, from his phonetic notes, the direct examination and a portion of the cross-examination of Lily Mae Hunt.)

"BY THE FOREMAN (Addressing his fellows): Are you satisfied,

"(REPORTER'S NOTE: To which question of the foreman, the other jurors nodded their heads in the affirmative.)

"BY THE COURT: Gentlemen of the jury, I think it is proper to remind you that the State is not confined to fixing the exact date to the time alleged in the indictment. It is enough, if you are sufficiently satisfied that the crime was committed at any time within two years before the finding of the indictment, which was on the eleventh day of May, 1934.

"(REPORTER'S NOTE: Thereupon, the jury again retired and shortly thereafter returned with a verdict of guilty.)"

The special charge to the jury thus given by the trial judge under the circumstances just related, was incorporated as a ground of the defendant's motion for a new trial. The motion for a new trial was overruled and exception duly noted to the denial of the motion. Under Section 4367, C. G. L., 2700 R. G. S., any portion of a charge of court actually *given* (but not charges requested and refused) may be excepted to by embodying same in a motion for a new trial, as was done in this case.

The charge above complained of was given by the judge spontaneously and was given at a time long after the case had been closed and submitted to the jury under instructions sufficient in themselves for that purpose.

While a trial judge is not prohibited by any rule of law from further so charging a jury on any point of law deemed by him appropriate to be brought to the trial jury's attention, it is error for a trial judge to undertake to recharge a jury after it has retired without first advising counsel for both parties of his intention to do so, and thereupon according to them a reasonable opportunity to request special charges of their own applicable to the particular feature of the case being brought in question, as well as an opportunity to make a request that the court's entire charge be reread to the jury in order to avoid over-emphasis of some isolated feature of the case; Compare: McBrayer v. State, 112 Fla. 415, 150 Sou. Rep. 736.

When it is made to appear that a prosecuting officer has overstepped the bonds of that propriety and fairness which should characterize the conduct of a state's counsel in the prosecution of a criminal case, or where a prosecuting attorney's argument to the jury is undignified and intemperate, and contains aspersions, improper insinuations, and assertions of matters not in evidence, or consists of an appeal to prejudice or sympathy calculated to unduly influence a trial jury, the trial judge should not only sustain an objection at the time, to such improper conduct when objection is offered, but should so affirmatively rebuke the offending prosecuting officer as to impress upon the jury the gross impropriety of being influenced by improper arguments. It is pertinent to quote in this connection a recent decision of the United States Supreme Court on this subject, taken from the case of Berger v. United States, (U. S.), 55 Sup. Ct. Rep. 629, 79 L. Ed. ____ (decided April 15, 1935), wherein the Federal Supreme Court reversed a conviction saying:

"The United States Attorney is the representative not of

an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor, indeed, he should do so. But, while he may strike blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

"It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none. The court below said that the case against Berger was not strong; and from a careful examination of the record we agree. Indeed, the case against Berger, who was convicted only of conspiracy and not of any substantive offense as were other defendants, we think may properly be characterized as weak—depending, as it did, upon the testimony of Katz, an accomplice with a long criminal record.

"In these circumstances prejudice to the cause of the accused is so highly probable that we are not justified in assuming its nonexistence. If the case against Berger had been strong, or, as some courts have said, the evidence of his guilt 'overwhelming,' a different conclusion might be reached. Compare: Fitter v. United States, 258 Fed. 573;

Johnson v. United States, 215 Fed. 679, 685; People v. Malkin, 250 N. Y. 185, 201-202; State of Iowa v. Roscum, 119 Iowa 330, 333. Moreover, we have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential. A new trial must be awarded. Compare N. Y. Central R. R. Co. v. Johnson, 279 U. S. 310, 316-318.

"The views we have expressed find support in many decisions, among which the following are good examples: People v. Malkin, *supra;* People v. Esposito, 224 N. Y. 370, 370-377; Johnson v. United States, *supra;* Cook v. Commonwealth, 86 Ky. 663, 665-667; Gales v. People, 26 Mich. 157; People v. Wells, 100 Cal. 459. The case last cited is especially apposite."

Counsel for the accused in this case has earnestly asserted that the cumulative effect of what was done by the State's Attorney in this case constitutes *per se* such departure from the rule just stated as to warrant a reversal. However, a decision on this point is not required because the proof against the defendant in this case is of such inconclusive nature and tendency that a majority of the Court are of the opinion that the ends of justice require a resubmission of the evidence to another jury at a new trial wherein it is to be anticipated that none of the alleged occurrences now complained of will be again charged as having been cast into the scales of justice under circumstances likely to unfairly influence the result.

Reversed for a new trial.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur.

ELLIS, P. J., and BUFORD, J., concur in the opinion and judgment.